# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-1848

_____

Andre Pope,                                    *
                                               *
              Appellant,                       *
                                               *    Appeal from the United States
    v.                                         *    District Court for the
                                               *    District of Minnesota.
ESA Services, Inc.,                            *
                                               *
              Appellee.                        *


_____

Submitted: December 17, 2004
Filed: May 10, 2005

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Andre Pope ("Pope") appeals the decision of the district court[1] granting summary judgment to ESA Services, Inc. ("ESA"), on his claims of employment discrimination based on race, retaliation, violation of the Minnesota Whistleblower

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Act, and defamation. On appeal, Pope contends that there was sufficient material evidence on each claim such that a reasonable jury could find in his favor. We affirm the district court's summary judgment in favor of ESA on all claims.

## I.    BACKGROUND

On summary judgment "[t]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party." *Winthrop Resources Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004). The non-moving party, however, must still "present[] evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [his] favor." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992). Because Pope is the non-moving party, "we must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable" to him. *Winthrop Resources*, 361 F.3d at 468.

Andre Pope is a black male of Liberian descent. In January 2001, Pope began working as a general manager in training for ESA, a nationwide chain of hotels. Shortly thereafter, he became general manager of ESA's Bloomington, Minnesota hotel. Pope initially performed his duties in a satisfactory manner.

Early in his tenure as general manager of the Bloomington hotel, Pope claims to have discovered that ESA had hired several illegal aliens based on falsified documents, which he reported to his district managers, Trevor Dulka and later, John Hulet.

In the summer of 2001, Pope attended a regional meeting in Chicago. Pope formed the impression that his regional manager, Gary Rumsey, ignored him and some other black managers. He alleges that Rumsey took several white managers to lunch and did not include Pope and two other black managers from his region.

Around the same time as the Chicago conference, ESA began soliciting applications for a district-manager-in-training position in the Bloomington area. Pope initially sought the advice of Dulka, his district manager, who told him that he should have one year of experience as a general manager before being promoted to managing multiple hotels. Pope inquired of both Susan Rebi in ESA's Chicago office and Rumsey about the position, prefacing his inquiries with the observation that there were no black district managers in the region. Rumsey told Pope that he would talk to Dulka to get a recommendation about whether Pope was ready for a promotion.

Rumsey talked to Dulka about the possibility of promoting Pope to the position of district manager in training. Dulka advised Rumsey that he did not think Pope was ready to manage multiple hotels. In August 2001, Rumsey hired John Hulet, a white male who previously was an area manager for a grocery-store chain, for the district-manager-in-training position. Rumsey hired Hulet because he felt he had the right qualifications for the position; in particular, Hulet had experience managing multiple grocery store locations, which Rumsey considered very important.

During a December inspection of the Bloomington hotel, Rumsey found the state of the rooms unacceptable. He gave the property a failing score and gave Pope a midrange rating of "Effective." Hulet met with Pope and explained the problems he and Rumsey found with the hotel. In a follow-up inspection, Hulet noted improvements but still found the rooms unacceptable.

Shortly after Hulet's inspection, Pope requested and was allowed to take off the week of December 29, 2001 through January 4, 2002. Hulet saw this as an opportunity to work with Phil Current, assistant manager of the Bloomington hotel, who recently had done poorly on an assistant-manager test. It was immediately apparent to Hulet, however, that Current's poor performance on the assistant-manager test was due in large part to Pope's inadequate training of Current. As Hulet began

to provide Current with training, Hulet found that the Bloomington hotel was still in poor condition. For example, Hulet found poor filing, incomplete employee files, incomplete petty-cash receipts and expired gift certificates which Pope failed to give his employees as a gift from ESA. Hulet also discovered that Benedict Brown, a front-desk representative at the Bloomington hotel, was due to earn overtime pay if he were to complete his scheduled nine-hour shift on January 4. Finally, Hulet discovered a shortage of $18.18 in the petty cash and $246.00 from the back-up drawer. In fact, on December 31, 2001, Hulet drafted an ESA Counseling Report, where he wrote, "I discovered funds missing from the petty cash fund and the second drawer fund, during an audit at site #733." The draft Counseling Report indicates that the action to be taken was termination. However, no action was taken at that time to effect Pope's termination. Rather, the record reflects that Hulet chose to further investigate the situation.

In a January 3, 2002, telephone conversation with Current, Pope claimed that he had taken the money from the back-up drawer to buy office supplies. Pope also told Current that he would "fix" the problem of paying overtime to Brown and replace him at 7:00 p.m. the next day. Hulet asked to speak to Pope, but Pope refused. After the conversation was recounted to Hulet, he construed Pope's statement as meaning that Brown would continue to work until 11:00 p.m. with the time worked after 7:00 p.m. to be added to a subsequent pay period, thereby improperly avoiding a claim by Brown to overtime pay.

Hulet immediately reported his findings to Rumsey and ESA's human resources department. Hulet testified that he talked to Rumsey "about the fact that we are missing money in petty-cash, that we are missing money in the second drawer, that our cash overages and shortages aren't being documented, that the AGM . . . hadn't been trained. He didn't even know what was going on at the property." An ESA Communication Summary opened by Kristin Long on January 4, 2002 stated:

DM, John Hulet, called regarding termination of GM, Andre Pope. . . . [Hulet] conducted an audit of monies on property and found $260 (approx.) missing consistently from petty-cash. AGM [Phil Current] stated that [Pope] loaned previous [assistant general manager] $200 for moving costs when leaving Company. [Pope] has not completed a cash over/short form in six months. In addition, [Current] called [Pope] to alert him to the fact that an employee, if worked scheduled 9 hour shift, would be eligible for overtime. [Pope] advised [Current] to stop the employee's payroll at 40 hours and record the extra time on the next pay period. Advised [Hulet] to confront [Pope] with findings. [Hulet] to then terminate for misconduct. Support decision.

On January 7, 2002, Hulet and Dulka called Pope into a meeting in the hotel's front office in order to confront Pope regarding Current's lack of training, the cash shortages and the alleged timecard fraud. Pope claims that other hotel employees were able to overhear the ensuing discussions.

In response to the petty-cash issue, Pope provided a partial accounting of the money by producing purchased office supplies, receipts for those office supplies, and the remaining cash.[2] Hulet was concerned about Pope's explanation, in part, because Pope claimed to have purchased office supplies on January 3, but the receipt was dated January 5.

The meeting was adjourned for a short time so that Hulet and Dulka could meet privately. When the meeting resumed, Pope was questioned about the alleged timecard fraud and a six-minute discrepancy on Brown's January 4 timecard. As to the alleged timecard fraud, Pope claimed that he relieved Brown at 7:00 p.m. the night before. Hulet and Dulka were not convinced by Pope's explanation; instead, they relied on the fact that Brown had not logged out of the computer system until

[2]The receipts were for the following: $3.50 from Cub for a 9-volt battery dated December 31, 2001; $18.00 for lunch from Don Pablos dated January 2, 2002; and $57.66 from Office Max for various office supplies dated January 5, 2002.

-5-

11:00 p.m. and that Brown's name was on the top of the cashier's report envelope that had been started at the beginning of his shift and submitted at the end of the day. In response to Hulet's inquiry about the six-minute discrepancy on Brown's timecard, Pope responded, "Who cares."

At this point, Hulet decided to terminate Pope's employment with ESA. The decision was based on the accumulation of issues Hulet had discovered: Pope's poor management as reflected in the earlier hotel inspection by Rumsey and Pope's failure to train Current; the undocumented shortage in the petty cash and in the back-up drawer; and the alleged timecard fraud involving Brown. Pope's dismissive attitude and failure to adequately explain the discrepancies resulted in Hulet's decision to terminate Pope's employment with ESA.

In July 2002, Pope filed a complaint alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act ("MHRA"), violation of the Minnesota Whistleblower Act, and defamation. ESA moved for summary judgment. In opposing ESA's motion for summary judgment, Pope asserted that his complaint also included claims of retaliation under Title VII and the MHRA. In its decision on the summary-judgment motion, the district court noted that although the retaliation claims were not properly pled, it would consider them. The district court concluded that Pope failed to demonstrate a disputed material fact and that ESA was entitled to judgment as a matter of law on all claims. Pope filed a timely notice of appeal.

## II.    DISCUSSION

We review the district court's order of summary judgment de novo. *Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999). "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(c). We have

-6-

noted that summary judgment "should seldom be utilized" in employment discrimination cases. *Stidham v. Minnesota Mining & Mfg., Inc.*, 399 F.3d 935, 937 (8th Cir. 2005). However, this Court also has noted that "there is no 'discrimination case exception' to the application of Fed. R. Civ. P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999). After viewing the evidence in the light most favorable to Pope, we conclude that no reasonable jury could find in his favor. Therefore, we affirm the district court.

## A. Employment Discrimination

Where the plaintiff is unable to produce direct evidence of discrimination in violation of Title VII or the MHRA, the Court will employ the familiar *McDonnell Douglas* burden-shifting framework. *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720 (8th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973)). Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets his burden of establishing a prima facie case of employment discrimination. *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). A minimal evidentiary showing will satisfy this burden of production. *Turner*, 336 F.3d at 720 (citing *Johnson v. Arkansas State Police*, 10 F.3d 547, 551 (8th Cir. 1993)). Upon establishing a prima facie case of discrimination, the burden of production shifts to the defendant to show that it had a legitimate, nondiscriminatory reason for its actions. *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)). Once this burden has been met, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination. *Id.* At all times, the burden of persuasion remains with the plaintiff. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 847 (8th Cir. 2002) (citing *St. Mary's*, 509 U.S. at 507).

## 1. Failure to promote in violation of Title VII and the MHRA

Pope first argues that the district court erred when it held that, with respect to ESA's decision not to promote him to the position of district manager in training, Pope failed to present evidence of discrimination sufficient to create a question for the jury. We conclude that the district court did not err. Although Pope established a prima facie case of race discrimination in the context of failure to promote, he has failed to present any material evidence calling into question ESA's proffered legitimate, nondiscriminatory reasons for not promoting him.

In order to establish a prima facie case of race discrimination in a failure-to-promote case, the plaintiff must show that: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) a similarly-situated candidate, not part of the protected group, was hired for the position instead. *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996). Pope has established a prima facie case. It is uncontroverted that Pope is black, that he applied for and was denied the position of district-manager-in-training, and that ESA hired Hulet, a similarly-situated white applicant. Further, Pope met the minimum qualifications for the position. *See Turner*, 336 F.3d at 720-21.

With the burden of production having shifted to ESA, it proffered two reasons for the decision to hire Hulet instead of promoting Pope. First, relying on the advice of Dulka, Rumsey concluded that Pope had not shown superior performance as a general manager and that Pope was not ready to manage multiple hotels. Second, Rumsey hired Hulet because he thought Hulet had the right qualifications for the position; most importantly, he had experience managing multiple grocery store locations. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Floyd v. State of Missouri Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999). Accordingly, the ultimate burden falls on Pope to produce

evidence sufficient to create a genuine issue of material fact regarding whether ESA's proffered nondiscriminatory justifications are mere pretext for intentional discrimination.

In his brief, Pope argues that ESA's proffered justifications are mere pretext because of "the fact that Rumsey treated only white managers to lunch and refused to socialize with any black managers." This simply does not cast doubt on ESA's proffered nondiscriminatory justifications for hiring Hulet instead of promoting Pope. First, the statement that Rumsey "refused to socialize with any black managers," is not supported by any evidence in the record. Second, Pope puts forth no evidence that Rumsey "treated" white managers to lunch at the Chicago conference. That Rumsey went out to lunch with other white managers at the conference is not sufficient to raise a material issue of disputed fact about whether the true reason behind Rumsey's decision not to promote Pope was racial discrimination. Finally, the record reflects that Rumsey's decision not to promote Pope was influenced primarily by Dulka's recommendation that Pope was not ready for a promotion. Pope has provided no evidence showing that the true reason behind Dulka's recommendation was racial discrimination.

## 2. Termination in violation of Title VII and the MHRA

"[T]he proof necessary to establish a prima facie case in discrimination cases is 'not inflexible' and 'varies somewhat with the specific facts of each case.'" *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998) (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990-91 (8th Cir. 1998)). In order to establish a prima facie case of discrimination on the part of ESA in terminating Pope, Pope must show that: (1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944-45 (8th Cir. 1994). A plaintiff can

prove the fourth element by showing that he was replaced by someone with similar qualifications. *See Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003).

The burden of establishing a prima facie case of employment discrimination is not onerous. *Davenport*, 30 F.3d at 944. Pope has made the requisite showing of a prima facie case of employment discrimination. It is undisputed that Pope is a member of a protected group and that he was terminated. Further, Pope was qualified for his position and was discharged under circumstances giving rise to an inference of discrimination because ESA filled his position with someone having Pope's qualifications.

ESA points to the alleged timecard fraud, the shortages in the petty cash and the back-up drawer, and the poor performance by Pope as legitimate, nondiscriminatory justifications for his termination. Pope attempts to prove that ESA's proffered justifications are pretextual in two ways.

First, buttressed by Brown's deposition testimony, Pope argues that he did, in fact, relieve Brown on January 4, 2002. He claims that he simply failed to log in to the computer under his own password and, instead, remained logged in under Brown's password. Pope contends that the alleged timecard fraud ultimately was disproved and that, as a result, ESA's reliance on it as a justification for his termination constitutes pretext.

The issue before the Court, however, is not whether ESA's conclusions about the alleged timecard fraud were correct; instead, the issue is whether ESA conducted a thorough investigation of the timecard-fraud incident and whether it made credibility determinations reasonably and in good faith. *See Euerle-Wehle v. United Parcel Serv.*, 181 F.3d 898, 900 (8th Cir. 1999). We conclude ESA did so. Hulet considered Pope's explanation but found it incredible in light of what Current told him about Pope "fixing" Brown's overtime pay, the fact that Brown continued

-10-

to be logged in to the computer beyond the time that Pope claimed he relieved Brown, and the fact that Brown's name, not Pope's, appeared on the cashier's report envelope submitted at the end of the day. Based on the combination of the apparent timecard fraud, Pope's dismissive attitude toward Brown's missing six minutes, shortages in the petty cash and the back-up drawer, the inadequate training of hotel personnel, and the problems revealed in the December inspection of the Bloomington hotel, Hulet decided that the best course of action was termination. The alleged timecard fraud became the proverbial "straw that broke the camel's back." *See Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999). Pope has produced no evidence showing Hulet did not believe Pope was guilty of misconduct. *See Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004); *see also Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("To the extent [plaintiff's] summary judgment evidence relates to his innocence of the sexual harassment charge, it is irrelevant. He must, instead, produce evidence demonstrating that [his employer] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him . . . .").

Pope also attempts to prove that ESA's proffered justification with respect to the petty-cash issue was a pretext by pointing to alleged disparate treatment of white ESA managers charged with similar shortages. In one incident, a white female general manager was fired for taking petty cash for non-business purposes after being given three written and one or two verbal warnings for performance issues. In another incident, a white male general manager was issued a written warning for taking $360 from the safe and cash drawer for non-business use.

A plaintiff may demonstrate pretext by showing that he was treated less favorably than similarly-situated employees outside of his protected group. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 775-76 (8th Cir. 2003). The test for determining whether employees are similarly situated to a plaintiff is a rigorous one. *Id.* at 775. "For discriminatory discipline claims, employees are similarly situated only when

-11-

they are involved in or accused of the same offense and are disciplined in different ways." *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 858 (8th Cir. 2004). Further, the plaintiff must show that he and those employees outside of his protected group were similarly situated in all relevant respects. *Id.*

Pope has failed to raise a triable question of material fact with respect to the issue of disparate treatment. He is not similarly situated to the white male general manager. That employee did not have Pope's history of mismanagement and was not accused of timecard fraud. In addition, Pope was actually treated in the same manner as the white female general manager. Both had prior performance issues, and both were terminated after a petty-cash discrepancy was found.

Accordingly, we conclude that Pope has failed to raise a triable question of material fact as to whether ESA's proffered justifications for not promoting him and for terminating him were pretextual. We therefore affirm the district court's summary judgment in favor of ESA as to Pope's race discrimination claims.

## B.     Retaliation

The district court addressed Pope's retaliation claims under Title VII and the MHRA, even though it concluded that such claims were not properly pled. Like the district court, we will assume that Pope properly pled such claims, and we will address them. However, we conclude that Pope has failed to make a prima facie showing of retaliation.

To establish a prima facie case of retaliation, Pope must show that he engaged in statutorily protected activity, that ESA took adverse action against him and that there is a causal connection between the two. *Rheineck v. Hutchinson Tech., Inc.*, 261 F.3d 751, 757 (8th Cir. 2001). Statutorily protected activity includes opposing an

act of discrimination made unlawful by Title VII. *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).

Pope has failed to provide sufficient evidence showing that he engaged in statutorily protected activity. In his brief, Pope argues that he was terminated for "complaining to management that there was a glaring absence of black managers above the position of GM at ESA." This is an overstatement of Pope's own deposition testimony. A more accurate version of the record shows that Pope, as a preface to expressing his interest in the district-manager-in-training position, shared his observation that there were no blacks in the district-manager position in his region. He commented that having black district managers would serve as an incentive for him. These comments are insufficient to show that Pope opposed an unlawful employment practice by ESA; Pope did not attribute the absence of black district managers in his region to racial discrimination. *See id.* Thus, Pope was not engaged in statutorily protected activity and did not establish a prima facie case of retaliation.

## C.    Minnesota Whistleblower Act

The Minnesota Whistleblower Act, Minn. Stat. § 181.932, prohibits retaliation against an employee who, in good faith, reports a violation or suspected violation of any federal or state law to an employer, governmental body or law enforcement official. *See Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Pope claims ESA violated the Whistleblower Act by terminating him for complaining to Dulka and Hulet regarding the hiring of undocumented workers. Like Pope's other claims, this claim is analyzed under the *McDonnell Douglas* framework: Pope has the initial burden of establishing a prima facie case, the burden then shifts to ESA to articulate a non-retaliatory reason for Pope's termination, after which Pope may show ESA's proffered reason is a pretext for discrimination. *See id.* Pope has failed to

satisfy his initial burden of establishing a prima facie case of retaliation under the Whistleblower Act.

The elements of the prima facie case of retaliation under the Minnesota Whistleblower Act are: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Id.* (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn. 1983) (internal quotations omitted)). An employee may prove causation with "circumstantial evidence that justifies an inference of retaliatory motive." *Cokley*, 623 N.W.2d at 632. However, close proximity between an employee's complaint and his termination of employment, without any other circumstantial evidence, fails to raise an issue of material fact regarding causation. *See id.* at 633; *Thompson v. Campbell*, 845 F. Supp. 665, 675 (D. Minn. 1994) ("[A]n inference of retaliatory motive is not justified by virtue of the timing of [the employee's] discharge alone.").

The only evidence Pope offers to prove causation is the temporal proximity between his complaint and termination. In his brief, Pope claims that he discussed the issue of hiring undocumented workers with Hulet as late as November 2001, just one month before he was terminated. However, there is no support for this date in the record. Rather, in his deposition, Pope stated that he and Hulet discussed the issue when Hulet "got hired," which would have been sometime in August 2001. The simple fact that Pope discussed the issue with Hulet approximately four months before he was terminated, without any other circumstantial evidence (such as evidence that Pope was criticized for raising the issue), does not constitute sufficient evidence of causation to support Pope's whistleblower claim.

## D.    Defamation

In his complaint, Pope claims that ESA defamed him by telling Pope's co-workers that he was terminated for timecard fraud and by forcing him to tell potential

-14-

employers that he was terminated for timecard fraud. He also alleges that Dulka and Hulet questioned him about missing money and receipts. Pope clarified this allegation in his deposition–he claimed that Hulet stated "we believe you took money" in the presence of others. The district court dismissed Pope's defamation claim involving timecard-fraud statements to Pope's co-workers because the claims were not pled with specificity. The district court granted summary judgment to ESA on the remaining defamation claims because they were literally true and because ESA and its agents enjoyed qualified privilege.

The inadequacy of Pope's complaint compels us to dismiss all of his defamation claims, except the forced self-publication claim. Minnesota law requires that "a claim for defamation must be pled with a certain degree of specificity." *Schibursky v. Int'l Business Machines Co.*, 820 F. Supp. 1169, 1181 (D. Minn. 1993). At a minimum, the plaintiff must "allege who made the allegedly libelous statements, to whom they were made, and where." *Id.* (quoting *Pinto v. Internationale Set, Inc.*, 650 F. Supp. 306, 309 (D. Minn.1986) (internal quotations omitted)). Pope's complaint does none of this. Instead, it generally alleges that "[ESA's] agents stated to Plaintiff's co-workers that he was discharged for 'timecard fraud.'" In addition, the complaint contains no specific facts relating to Pope's claim that Hulet defamed him. Consequently, the proper course is dismissal of these claims. *See* Fed. R. Civ. P. 12(b)(6).

We are left with the claim that Pope was forced to self-publish the defamatory timecard-fraud statement to potential employers. In order to prevail on a claim of defamation in Minnesota, a plaintiff must show that the defendant "made: (a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). "Generally, there is no publication where a defendant communicates a statement directly to a plaintiff who then communicates it to a third person." *Lewis v. Equitable Life Assurance Soc'y*,

389 N.W.2d 876, 886 (Minn. 1986). However, the publication element may be met where the plaintiff is compelled to publish the defamatory statement to a third party, and it was foreseeable to the defendant that the plaintiff would be so compelled. *Id.* at 888. We conclude that summary judgment on the forced self-publication defamation claim is appropriate because Pope has failed to produce sufficient evidence to create a factual issue as to the publication element.

The state of the evidentiary record before us is similar to that before the Minnesota Supreme Court in *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406 (Minn. 1994). In *Rouse*, the Minnesota Supreme Court held that the plaintiff failed to put forward sufficient evidence to create a factual dispute as to whether he was compelled to publish his employer's allegedly defamatory statement in subsequent interviews for employment. The court explained:

> The only evidence [the plaintiff] has provided is his own deposition testimony, during which he submitted a list of thirteen companies where he interviewed. [The plaintiff] remembered some details about the interviews, such as roughly where the companies' offices were located and, in a few cases, whether he interviewed with a man or a woman. However, he could not provide names of interviewers nor provide any documentary evidence of having filled out applications, sent resumes or received rejections.

*Id*. at 411. In this case, Pope has provided even less evidence, making only vague references to a handful of job opportunities that were allegedly lost due to his forced publication of the allegedly defamatory statement regarding timecard fraud. Consequently, we hold that summary judgment is appropriate on this claim because Pope has failed to present sufficient evidence with respect to the publication element.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of ESA on all claims.

_____