# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3393

_____

|  |  |  |
|---|---|---|
| Mary E. Grosenick, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| SmithKline Beecham Corporation, | * | |
| doing business as GlaxoSmithKline | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: May 15, 2006
Filed: July 20, 2006

_____

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Mary Grosenick appeals the district court's[1] grant of summary judgment for
SmithKline Beecham Corporation ("Glaxo") against her claim under the Family and
Medical Leave Act ("FMLA"),[2] 29 U.S.C. § 2612.  Grosenick argues that the district

_____

[1] The Honorable James M. Rosenbaum, Chief Judge, United States District
Court for the District of Minnesota.

[2] Grosenick also brought claims under Title VII and the Minnesota Human
Rights Act which are not before us on appeal.

court erred in finding no genuine issue of material fact as to whether Grosenick was given proper notice of the dates of her FMLA protected medical leave. We affirm.

I.

Grosenick was a pharmaceutical sales representative for Glaxo from December 1992 until January 2002. The events of Grosenick's last six months with Glaxo form the basis of the lawsuit at issue in this appeal.[3]

On July 30, 2001, Grosenick gave notice to Glaxo that her physician recommended that she have surgery on her knee. Grosenick forwarded the doctor's recommendation to Sandi Cerretti, a Glaxo employee designated to handle leave requests. On that same day, Cerretti sent Grosenick a form letter letting Grosenick know that she was eligible for protection under the FMLA. The FMLA letter stated that "[t]he medical and/or family leave you have requested will be counted against your twelve-week entitlement under FMLA." The materials also stated that "[s]hould your leave of absence exceed twelve weeks within a rolling twelve month period, Company policy allows your manager to fill or eliminate your position." In an email to her supervisor, Grosenick confirmed that effective July 30, Grosenick was on medical leave. Although Grosenick's July 30 email said that she would begin leave immediately, Glaxo did not compute the beginning of the leave period until August 2, 2001.

On August 20, 2001, Grosenick again met with her doctor. It was at this time that Grosenick and her physician completed the necessary forms for her FMLA leave. The physician certified that Grosenick should not work until her knee surgery was completed.

---

[3] Because we are reviewing a grant of summary judgment in favor of Glaxo, we outline the facts drawing all reasonable inferences in favor of Grosenick.

Glaxo did not complete the actual written approval of Grosenick's medical leave until after her leave had begun. On August 30, 2001, Glaxo approved Grosenick's medical leave under the FMLA. In the approval of leave, the stated period for leave was given as August 20, 2001, through September 20, 2001.

On September 24, 2001, Glaxo granted a second request for medical leave that extended Grosenick's leave until October 10, 2001. On or around October 10, 2001, Grosenick began to argue with representatives of Glaxo about the proper start date for her leave. Using August 2, 2001 as the start date of Grosenick's FMLA leave, Glaxo determined that her twelve week period of protected leave was to end on October 24, 2001. Also on or about October 10, 2001, Grosenick sent Glaxo a medical update stating that she was unable to work. Grosenick told company representatives that her surgery was tentatively scheduled for November 20, 2001. There were phone calls and emails sent between Grosenick and representatives of Glaxo, but there was no definitive agreement as to Grosenick's start date for medical leave. Grosenick claims to have not received several communications from Glaxo that were attempts to notify her of the imminent end of her twelve weeks of FMLA leave time.

Grosenick returned to work on October 21, 2001 and worked through October 24, 2001. On that date, Glaxo listed Grosenick as a "displaced employee." This status did not terminate Grosenick's employment with Glaxo, but did leave Grosenick without an assigned position with the company. Under company policy, Grosenick was afforded thirty days to find a new position within the company. On October 26, 2001, Glaxo gave Grosenick notice that she could not unilaterally return to work without doctor's approval because her most recent medical update had said that she was unable to work. On October 27, 2001, Glaxo granted a third request for medical leave extending Grosenick's leave until December 10, 2001. However, this last grant of medical leave listed the start date of her leave time as August 2, 2001 whereas the two previous letters had referred to the start date as August 20, 2001. On October 30, 2001, Grosenick was notified via voicemail that her position with Glaxo had been

filled. This did not mean that Grosenick's employment with Glaxo was terminated. Rather, it confirmed Grosenick's status as a "displaced employee."

On October 31, 2001, Grosenick met with her doctor. After that meeting, the doctor gave approval for Grosenick to return to work under certain restrictions. This approval came after the twelve-week protected period expired if the FMLA leave time began on August 2, 2001.

Grosenick claims that, in November 2001, a representative of Glaxo told her that because of her "displaced employee" status, Glaxo attempted to secure for Grosenick one of several open positions in the Twin Cities area. Grosenick applied to several of these positions through Glaxo's intranet, but received no response. In late January 2002, Glaxo terminated Grosenick's employment.

Grosenick filed suit arguing that she did not receive adequate notice of the dates of her medical leave. She argued that had she known her job would not have been protected, she would have returned to work before her job protection period expired on October 24, 2001. Grosenick also argued that her twelve-week protection period should have been extended because she allegedly worked while on leave. The district court rejected this last argument because Grosenick's work while on leave was not authorized.[4] Therefore, the district court granted summary judgment for Glaxo. Grosenick appeals.

---

[4] This issue is not before us on appeal and was not briefed by the parties. The argument that Grosenick's leave time should be extended because she was working on leave is therefore abandoned. See Griffith v. City of Des Moines, 387 F.3d 733, 739 (2004).

We review a grant of a motion for summary judgment de novo. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005). A motion for summary judgment is properly granted if the non-moving party is unable to show a "genuine issue of material fact" as to the underlying claim. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). In response to a properly filed and supported motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. It is not enough for the non-moving party to raise doubts about facts that do not provide a material issue for trial. Id. at 587.

Grosenick argues that the failure to properly notify her of the start and end dates of her FMLA leave time means that Glaxo improperly filled her position. We disagree.

The FMLA was designed to allow an employee twelve weeks of protected leave within a twelve-month period. See Slentz v. City of Republic, Mo., 448 F.3d 1008, 1010 (8th Cir. 2006). The United States Supreme Court held that an employee cannot get more than twelve weeks of leave based solely on the employer's lack of notice. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 95-96 (2002) (striking down a Department of Labor notice requirement for the FMLA). In Ragsdale, the employee took thirty weeks of leave. The employer did not approve FMLA protection until after the twelve-week protected period had expired. Nonetheless, the Ragsdale court found that the lack of notice during the FMLA protected period did not give a plaintiff a cause of action.

In this case, the employer granted FMLA approval much sooner than in Ragsdale. Further, there was considerable discussion between Grosenick and Glaxo about the proper end date of the leave. To argue now that Grosenick was unaware that

the company thought there was an earlier start date than Grosenick did, ignores the record. Glaxo's mailings on the exact dates of leave certainly could have been clearer. However, the ambiguity and contradictions in the documents do not give rise to an FMLA claim. If the court in Ragsdale did not find a cause of action when the employer gave no notice, it follows that proper notice followed by confusion should not create a claim.

To support her argument that her protected period should have been extended, Grosenick cites Stansberry v. Uhlich Children's Home, 264 F.Supp. 2d 681 (N.D. Ill. 2003). Stansberry has no controlling authority on our court, but we nevertheless consider it for its persuasive value. Stansberry is readily distinguishable from the present matter. The procedural posture of Stansberry was notably different than the present case as the court was reviewing a motion to dismiss instead of a motion for summary judgment. Further, the court in Stansberry rejected a very different argument than is at issue here. In Stansberry, the defendant argued that Ragsdale meant that employees could not take more than twelve weeks of leave under the FMLA. Id. at 689. However, Ragsdale does not stand for that proposition because the FMLA does not bar longer leave periods - it only ensures protected leave for a twelve week period. In this case, Glaxo is not arguing that Grosenick could not take more than twelve weeks of leave. In fact, Glaxo granted more than twelve weeks of leave for Grosenick. Consequently, Stansberry does not apply to the present case.

Moreover, the record indicates that Grosenick had notice of the start date of her leave when she began taking leave. On July 30, 2001, Grosenick sent a note to her supervisor confirming the beginning of her leave. Therefore, Grosenick knew that her twelve week period would begin on July 30, 2001, when she commenced her medical leave. While subsequent mailings may have confused the start date, it is disingenuous to argue that Grosenick did not originally have notice of the start of her FMLA period.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____