# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3407

_____

Loralie Ann Musolf, an individual

*Plaintiff - Appellant*

v.

J.C. Penney Company, Inc., a Delaware corporation doing business in Minnesota

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 7, 2014
Filed: December 5, 2014 (Corrected December 8, 2014)

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Loralie Ann Musolf brought this employment discrimination case claiming retaliation and reprisal against her former employer J.C. Penney Company, Inc. ("J.C. Penney"). The district court[1] granted summary judgment to J.C. Penney on all claims. Musolf now appeals. We affirm.

_____

[1]The Honorable Joan Ericksen, United States District Judge for the District of Minnesota.

I

Musolf was employed with J.C. Penney for two years as a loss prevention specialist. Musolf led a team of employees and worked to prevent theft from the St. Cloud, Minnesota, J.C. Penney store. Musolf was effective at her job and decreased theft from the store. Musolf's direct supervisor, store manager Craig Child, had concerns Musolf did not display respect for her team and needed to develop her teamwork. Child conducted coaching sessions with Musolf to work on these issues during her employment with J.C. Penney.

In late January and early February 2010, Musolf made claims of sexual harassment against one of her co-workers, Joe Pekarna, based on three touching incidences which occurred in late January. Musolf made the complaints to Child. Shortly thereafter Child met with Pekarna and Pekarna never touched Musolf again. The parties dispute when Musolf learned of Child's meeting with Pekarna, but Musolf acknowledges she was repeatedly told by Child the situation was taken care of. In March 2010, Musolf was presented with a certificate commending her outstanding performance. In May 2010, Musolf earned a merit raise.

By August 2010, Child had received complaints about Musolf from several employees, including Pekarna. Pekarna raised three recent incidents to Child, one of which involved an argument between Musolf and Pekarna on August 13, 2010. Pekarna had reported the confrontation to Child on August 16, 2010. On August 18, 2010, Child held a meeting with Musolf to discuss the complaints. The district loss prevention manager, Grant Grassle, was also in attendance and commended Musolf on her effectiveness at apprehending shoplifters.

Thereafter, Child held two further meetings with Musolf, during which Musolf admits she refused to fully participate in answering questions. Child believed Musolf had downloaded documents in violation of her confidentiality agreement and believed Musolf had involved another employee with an attempt to sneak into Child's office.

On September 2, 2010, Child contacted Human Resources and recommended J.C. Penney fire Musolf. Later on September 2, 2010, Musolf e-mailed Kobe Zimmerman, the district manager, about the incidents from January 2010 involving Pekarna. Musolf communicated she believed Pekarna had not been properly disciplined and should have been fired. Musolf also communicated she had received no firm commitment from J.C. Penney that Pekarna would not re-offend.

J.C. Penney suspended Musolf with pay during an investigation and ultimately terminated her on September 9, 2010. Musolf was terminated for failure to cooperate in a company investigation, for taking confidential information without permission, and for attempting to involve another associate in a plan to sneak into the store manager's office and take documents without permission.

On July 2, 2012, Musolf commenced this lawsuit in the federal district court, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act and sex discrimination and reprisal in violation of the Minnesota Human Rights Act ("MHRA"). J.C. Penney moved for summary judgment on all of Musolf's claims, which the district court granted. Musolf now appeals, arguing the district court improperly granted summary judgment on her retaliation and reprisal claims.

II

"We review a district court's decision to grant a motion for summary judgment *de novo*, applying the same standards for summary judgment as the district court." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment motions, the burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party. Davis v.

Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012). The non-moving party must substantiate her allegations by "sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007) (first alteration in original) (quotation and citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Ricci v. DeStefano, 557 U.S. 559, 585 (2009)).

To survive a motion for summary judgment, Musolf must show a *prima facie* case of retaliation. To establish a retaliation claim under Title VII, an employee must show: (1) she engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011). When a plaintiff lacks direct evidence of retaliation, the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), applies. Under McDonnell Douglas, Musolf bears the initial burden of making a *prima facie* showing of retaliation. If Musolf makes this *prima facie* showing, the burden shifts to J.C. Penney to articulate a legitimate, non-retaliatory reason for the adverse action. Once J.C. Penney does so, the burden shifts back to Musolf to put forward evidence of pretext. The burden-shifting framework applicable to Title VII retaliation claims is also applicable to reprisal claims under the MHRA. Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101-02 (Minn. 1999).

Musolf established she engaged in a statutorily protected activity by complaining to Child about sexual harassment. Musolf also established adverse employment action was taken against her when she was terminated. The survival of Musolf's claims therefore depends upon establishing a causal link between her complaint to Child and her termination. The district court found Musolf had not shown this causal link. We agree.

-4-

The burden to show a *prima facie* case is not difficult, but one must show some causation. The Supreme Court recently held retaliation claims brought under Title VII must be proved according to traditional principles of but-for causation. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). The Minnesota courts have not addressed, and we need not determine, whether the Nassar but-for causation standard similarly applies for reprisal claims under the MHRA.[2] Even applying the lower standard of causation employed by Minnesota courts–that causation can be shown "if an illegitimate reason more likely than not motivated the discharge decision"–Musolf has failed to show sufficient causation to survive summary judgment. McGrath v. TFC Bank Sav., 509 N.W.2d 365, 366 (Minn. 1993) (internal quotation marks and citation omitted).

Musolf presented no evidence of conduct or statements which would permit a reasonable jury to find J.C. Penney's motivation to fire her was because she complained of sexual harassment. The time-lag between Musolf's complaints and her termination creates a challenge for Musolf to establish a causal link. Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1080 (8th Cir. 2010) (finding a six-month gap between the protected activity and the adverse employment action "weakens the inference of causation"). In the circumstances of this case, the seven-month time-lag "is insufficient to show, and in fact weakens the showing of, the required causal link." Wallace v. Sparks Health Sys., 415 F.3d 853, 859 (8th Cir. 2005) (interval of nearly a year); see also Kipp v. Mo. Hwy. & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (interval of two months). Indeed, in the months between her complaint and her

---

[2]Musolf asks this court to reverse the district court's grant of summary judgment on her reprisal claims arguing the district court applied the wrong legal standard of causation. However, the district court correctly noted Minnesota has not yet determined whether the Nassar but-for test applies to reprisal claims, and noted Musolf's causation argument fails under either causation standard.

termination, Musolf was praised for her efficacy and given a salary increase. It was not until after Child heard Musolf had accessed confidential documents and asked another employee to help her break into the manager's office that Child recommended J.C. Penney fire Musolf.

Regarding Musolf's inquiry to Zimmerman on September 2 about Musolf's earlier complaints, the inquiry occurred directly before Musolf was fired. If Musolf contacted Zimmerman to prevent her termination by engaging in protected activity in temporal proximity to her impending termination, she has failed to show causation. Hervey v. Cnty. of Koochining, 527 F.3d 711, 723 (8th Cir. 2008) ("Insubordinate employees may not insulate themselves from discipline by announcing an intention to claim discrimination just before the employer takes action."). If Musolf was concerned about Child's failure to address the alleged sexual harassment, she has failed to show causation because her September 2 e-mail merely related back to her original complaint, did not raise any new complaints, and was sent after Child recommended termination.

Musolf additionally argues it was Pekarna's August 16 complaint which led to Musolf's termination. However, Pekarna's complaint was one of only several topics discussed at the August 18 meeting and one of only several complaints which had been made against Musolf by other employees. Additionally, although Pekarna's complaint caused, in part, the August 18 meeting, Pekarna's complaint did not lead to Musolf's termination.[3] Rather, Musolf's termination was based on her actions after

---

[3]Musolf argues the August 18 meeting was itself an adverse employment action. It was not. An adverse employment action is a "tangible change in working conditions" and must produce "a material employment disadvantage." Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007) (quotation marks and citation omitted). Although Musolf experienced stress after the August 18 meeting and was concerned about the status of her job, Musolf does not dispute J.C. Penney did not constructively discharge her, "terminate[] [her], cut her pay or benefits, or change[] her job duties or responsibilities" during the August 18 meeting. Wilkie v. Dep't of

the August 18 meeting, including Musolf's refusal to participate in the investigation and J.C. Penney's understanding Musolf accessed confidential information and had another employee help Musolf break into the store manager's office. Musolf has failed to show how Pekarna's complaint caused her termination and has failed to show how Pekarna's complaint was related to her protected conduct.

Musolf has failed to show direct or inferential evidence J.C. Penney engaged in retaliation. Because Musolf has failed to show a *prima facie* case of retaliation and reprisal, we need not engage in the McDonnell Douglas burden-shifting analysis to affirm the grant of summary judgment to defendant.

III

Accordingly, we affirm the judgment.

_____

Health and Human Servs., 638 F.3d 944, 955 (8th Cir. 2011). Because Musolf has failed to demonstrate any materially significant disadvantage occurred based on the August 18 meeting, she is unable to show she suffered an adverse employment action at that time.