Corrina R. STODDARD, Plaintiff,

v.

BE & K, INC.; BE & K Construction
Company, LLC; KBR Construction
Company, LLC; and Kevin Jones, De-
fendants.

No. 3:12–cv–00063–JEG.

United States District Court,
S.D. Iowa,
Davenport Division.

Jan. 29, 2014.

Robert Scott Gallagher, Peter Glenn Gierut Gallagher Millage & Gallagher PLC, Bettendorf, IA, for Plaintiff.

Timothy M. Feeney, McCarthy Callas & Feeney PC, Rock Island, IL, Martha L. Shaff, Betty Neuman & McMahon PLC, Davenport, IA, for Defendants.

### *ORDER*

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on Motion for Summary Judgment by Defendants BE & K, Inc.; BE & K Construction Company, LLC; KBR Construction Company, LLC [1] (collectively, BE & K); and Kevin Jones (Jones). Plaintiff Corrina R. Stoddard [2] (Stoddard) resists. A hearing on the Motion was conducted on December 19, 2013. Attorney Robert Scott Gallagher was present on behalf of Plaintiff, attorney Martha Shaff was present on behalf of BE & K, and attorney Timothy M. Feeney was present on behalf of Jones. The Motion is fully submitted and ready for disposition.

## I. FACTUAL BACKGROUND [3]

Stoddard began working for BE & K Construction Company on June 9, 2008.

1. KBR Construction Company, LLC, purchased BE & K, Inc. and BE & K Construction Company, LLC, during the course of the events in this case.

2. Plaintiff's name was Corrina Stoddard at the time this cause of action occurred; however, her name is now Corrine Wharff. For purposes of clarity in the record and this Order, the Court will refer to the Plaintiff as Corrina Stoddard.

3. The facts set forth are either undisputed or viewed in the light most favorable to the non-moving party. *See Lexicon, Inc. v. ACE Am. Ins. Co.,* 634 F.3d 423, 425 (8th Cir.2011);

Stoddard was assigned to work as a planner's assistant for the Archers Daniels Midland Company (ADM), and her primary job responsibility was data entry. Jones was hired at BE & K as Project Site Manager on August 18, 2008. Stoddard was assigned to assist Jones with data entry in developing a Performance Metrics Data Base—a system which measured the performance of BE & K employees.

In the second week of January 2009, ADM employees expressed concern to Jones and Beverly Norris (Norris), Stoddard's supervisor, about Stoddard's work performance. Specifically, they were informed that Stoddard was falling behind in her assigned data entry and, Stoddard and another coworker, Dawn Gerdes (Gerdes), had been emailing about non-work related matters on company time. About one week later, Jones had a meeting with Stoddard and Gerdes to counsel them on their unprofessional behavior. Jones took Stoddard and Gerdes into a small room and screamed and yelled at them for approximately ten to fifteen minutes for sending inappropriate emails regarding other BE & K employees.

On February 12, 2009, Stoddard became engaged to be married. In April 2009, when Jones found out about Stoddard's engagement, Jones questioned Stoddard about why she did not tell him. According to Stoddard, Jones approached Stoddard a few weeks later and again questioned her as to why she did not tell him she was engaged, and during that encounter, Jones briefly rubbed her shoulders. Stoddard asserts that thereafter, Jones began to ignore Stoddard in the office and tell Stoddard that he was busy when Stoddard would ask for directions on her job duties.

In April 2009, Jones was informed that Stoddard and Gerdes were again talking about other BE & K employees; particularly, he was informed that they were chatting about a company investigation into complaints of harassment by two other BE & K employees. Jones called a meeting with all of the female employees of the administrative team, which included Stoddard, to discuss the serious nature of talking about a confidential company investigation involving harassment. Jones screamed and yelled at the women and told them they were unprofessional. Jones' conduct brought some of the women to tears. Jones told the group that he was not afraid to treat them like they were in the military and he stated, "If any of you do not want to be here, then you need to leave now." Stoddard Dep. 46:10–11, BE & K App. 7, ECF No 13–4. Stoddard responded by stating, "Sometimes I do and sometimes I don't." *Id.* 46:15–16. Displeased with Stoddard's response, Jones told the group "that he would make it hell for [them] if [they] ever quit there." *Id.* 46:17–18. Stoddard found it offensive that Jones screamed at a group consisting of only women and not men.

Stoddard asserts that beginning in February 2009, she made several complaints about Jones' behavior to her supervisors Norris, Jess Lockhart (Lockhart), and Cheryl Clark (Clark), as well as to the BE & K Hotline. Stoddard's complaints about Jones included that Jones ignored her, overloaded her with work, and told the women in the office that he was going to treat them like they were in the military.

On April 21, 2009, Stoddard was verbally counseled by Lockhart about her declining work performance and attitude, and Lock-

*O'Neil v. City of Iowa City, Iowa,* 496 F.3d 915, 916 n. 1 (8th Cir.2007). Statements in Stoddard's post-deposition affidavit, Stoddard Aff. ¶¶ 1–34, Pl.'s Resist. App. 15–18, ECF

No. 22–4, that substantially embellish or contradict her prior deposition testimony are not considered facts for purposes of this Motion. *See infra* Part III.A.

hart instructed Stoddard on areas of needed improvement. Lockhart advised Stoddard that participation in office gossip and non-work related emails to coworkers must stop.

Without notifying BE & K, Stoddard failed to show up for work from May 12 through May 14, 2009. Stoddard returned to work on May 15 with a doctor's note explaining the reason for her absence. Stoddard asserts she was absent from work because of symptoms related to depression and stomach sickness. After arriving at work on May 15, Stoddard was instructed to go into the break room to meet with Jones and Clark. Stoddard sat in the room while Jones and Clark contacted the KBR HR/Labor Relations Department to determine how to handle Stoddard's attendance issues. BE & K's attendance policy provides varying levels of employee discipline based on the number and context of the employee's absences. After waiting approximately 45 minutes, an ADM employee approached Stoddard from the hallway and asked her why she was waiting for paperwork if she was being fired. Stoddard then walked out of the break room and turned in her ADM identification card, office keys, safety eye wear, and helmet to the front gate. At no point was Stoddard expressly informed by Jones or Clark that she was being terminated.

Stoddard filed suit on May 14, 2012, after receiving right to sue letters from the Iowa Civil Rights Commission and Equal Employment Opportunity Commission. Stoddard alleges claims for hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Chapter 216 of the Iowa Civil Rights Act (ICRA). Stoddard also asserts claims for intentional infliction of emotional distress against Defendants, and aiding and abet-

ting against Jones. BE & K and Jones moved for summary judgment alleging (1) Stoddard failed to make a prima facie showing of sexual harassment/hostile work environment and retaliation under Title VII and the ICRA, (2) Stoddard's claim for intentional infliction of emotional distress is pre-empted by the ICRA, and (3) even if it was not pre-empted, the claim for intentional infliction of emotional distress fails as a matter of law. Jones further alleges that because Stoddard's claims for harassment/hostile work environment and retaliation fail, Stoddard's claim against him for aiding and abetting also fails. Stoddard resists, arguing there are material facts at issue precluding summary judgment.

## II. JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 as the claims arising under Title VII of the Civil Rights Act of 1964 are matters of federal law. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the federal claims that they form the same case or controversy.

## III. DISCUSSION

### A. Stoddard's Post–Deposition Affidavit

■ In support of her resistance to summary judgment, Stoddard submitted a post-deposition affidavit, ECF No. 21–4, providing statements that supplement, embellish, and contradict statements made in her prior sworn deposition. Generally, a district court must consider an otherwise admissible affidavit, *"unless that affidavit contradicts previous deposition testimony."* See *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 498 (8th Cir.2008) (emphasis added). In addition, a party cannot generate issues of fact by submitting an affidavit that contradicts prior deposition testimony

without showing special circumstances reflecting confusion or mistake in the earlier deposition. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364–65 (8th Cir.1983) (noting that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *see also Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 112 (8th Cir.1997) (concluding that the plaintiff "attempted to manufacture a material issue of fact just to evade the impact of summary judgment by inexplicably changing his testimony. Thus, the district court correctly disregarded the subsequent manufactured contradictory testimony of [the plaintiff] and concluded that no factual issue for trial existed . . . .").

■ Although much of Stoddard's affidavit simply rephrases her prior deposition testimony in a light most favorable to her claims, the affidavit also contains statements that substantially embellish and contradict her prior sworn statements. In the affidavit, Stoddard uses such terms as "consistently," "repeatedly," "systematically," and "numerous" to refer to only two distinct occasions where Jones yelled at her and the other women in the office.[4] Stoddard Aff. ¶¶ 9, 12, 18, & 26, Pl.'s App. 15–17, ECF No. 21–4; Stoddard Dep. 51, ECF No. 21–4. In her affidavit, Stoddard also embellishes her prior deposition testi-

mony by asserting that "Mr. Jones began retaliating against [sic] me by repeatedly screaming at me in front of the other employees." Stoddard Aff. ¶ 12, ECF No. 21–4. Whereas, in her deposition, Stoddard stated that Jones yelled at all of the women in the office on only two occasions, and he never yelled at her individually. Stoddard Dep. 47:15–17, Pl.'s App. 6, ECF No. 21–4 (Q. Did Kevin Jones ever pull you aside individually and scream at you by yourself? A. I don't believe so. . . ."). Moreover, Stoddard's prior deposition testimony made no reference to Jones yelling at the women in retaliation for Stoddard's complaints, but rather Stoddard testified that Jones yelled because of reports of inappropriate emails and low work productivity by the women in the office. Stoddard Dep. 46:21–24, Pl.'s App. 6, ECF No. 21–4 ("[H]e was, like, yelling at all of us for acting unprofessional and how we were—we weren't doing our jobs that we were supposed to be doing. He wasn't getting the work productivity out of us.").

Stoddard's later executed affidavit directly contradicts Stoddard's earlier deposition testimony in stating, "Mr. Jones also told me that if I reported his behavior to anyone but himself or Cheryl it would be grounds for termination." Stoddard Aff. ¶ 19, Pl.'s App. 17, ECF No. 21–4. In her prior deposition, Stoddard directly denied that Jones ever threatened to terminate her employment. Stoddard Dep. 58:10–14, Pl.'s App. 9, ECF No. 21–4 ("Q. Did Kevin [Jones] ever threaten to terminate your employment? A. No. Q. No? A. No.").

---

4. *Compare* Stoddard Aff. ¶¶ 9, 12, 18, & 26, Pl.'s App. 15–17, ECF No. 21–4 ("Mr. Jones began to *systematically* interfere with my work"; "Mr. Jones began retaliating against the [sic] me by *repeatedly* screaming at me"; "Mr. Jones' screams and insulting behavior would *consistently* bring me and the other women in the office to tears"; "After *numerous* instances [of] . . . Jones'[ ] behavior, I

could no longer deal with the stress" (emphasis added)), *with* Stoddard Dep. 51:17–18, Pl.'s App. 7, ECF No. 21–4 ("Q. But that happened on two occasions, right, where he—. A. The screaming? Q. Well, yeah. I asked you about that earlier. A. Yeah. Q. Okay. So we are talking about two occasions? A. In a short period of time, yes.").

Stoddard also proclaims in the affidavit that "[t]he screaming and *content* of the meeting was insulting and inappropriate." Stoddard Aff. ¶ 14, Pl.'s App. 16, ECF No. 21–4 (emphasis added). However, in her prior deposition, Stoddard asserted that it was not the content of the meetings that she found offensive, but rather she was offended "[b]ecause he screamed at the women and talked to the women [and] I never heard him talk to ... one of the boys, the males." Stoddard Dep. 41:19–21, Pl.'s App. 5, ECF No. 21–4.

The affidavit also provides supplemental conclusory statements that have no support in the record. For example, Stoddard attests that "Mr. Jones only directed his insults and screams at women, even though men in the office were also discussing Mr. Jones' inappropriate behavior." Stoddard Aff. ¶ 17, Pl.'s App. 16, ECF No. 21–4. While this last statement is less in direct conflict with the deposition testimony, the record contains no indication that men in the office were behaving similarly to the women on the material issues.

Accordingly, statements in Stoddard's affidavit that substantially embellish and contradict Stoddard's prior testimony will not be considered as facts in the record for the purpose of this Motion. *See Camfield Tires,* 719 F.2d at 1364–65. Stoddard did not raise any issues of confusion or mistake in her prior deposition,[5] and a review of the deposition transcript confirms that there are no special circumstances that permit a post-deposition affidavit to contradict her prior deposition testimony. *See Am. Airlines,* 114 F.3d at 111.

### B. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must support its contention by pointing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to demonstrate no genuine issue of material fact. Fed.R.Civ.P. 56(c)(1)(A). The Court "must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party." *Weitz Co., LLC v. Lloyd's of London,* 574 F.3d 885, 892 (8th Cir.2009) (quoting *Carraher v. Target Corp.,* 503 F.3d 714, 716 (8th Cir.2007)).

To defeat summary judgment, the nonmovant must respond by "produc[ing] sufficient evidence to support a verdict in his favor based on more than speculation, conjecture, or fantasy." *Doe v. Dep't of Veterans Affairs,* 519 F.3d 456, 460 (8th Cir. 2008) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

**5.** At hearing, the Court provided counsel with a memorandum listing several questions for discussion, including whether special circumstances exist that would allow the Court to accept contradictory statements in the Affidavit. Counsel for the Defendants argued this inquiry at the hearing would not be appropriate as untimely because Plaintiff had a duty to include such special circumstances in the Affidavit. Upon further review, the Court agrees. *See City of St. Joseph, Mo. v. Sw. Bell Tel.,* 439 F.3d 468, 476 (8th Cir.2006).

(1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation marks omitted).

**C. Hostile Work Environment**

■ "Sexual discrimination that creates a hostile or abusive work environment is a violation of Title VII. . . ." *Vajdl v. Mesabi Acad. of KidsPeace, Inc.,* 484 F.3d 546, 549–50 (8th Cir.2007) (quoting *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1013 (8th Cir.1988)). To establish a prima facie case of hostile work environment, the Plaintiff must prove "(1) she is a member of a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of her employment." *Alvarez v. Des Moines Bolt Supply, Inc.,* 626 F.3d 410, 419 (8th Cir.2010). Hostile work environment claims require a high evidentiary showing and are generally limited in nature. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). A plaintiff must prove "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal citations and quotations marks omitted). The Eighth Circuit has recently stated that "[t]his 'demanding' standard requires 'extreme' conduct 'rather than merely rude or unpleasant conduct.'" *Rester v. Stephens Media, LLC,* 739 F.3d 1127, 1131 (8th Cir.2014) (quoting

*Cross v. Prairie Meadows Racetrack & Casino, Inc.,* 615 F.3d 977, 981 (8th Cir. 2010)).

■ Hostile work environment claims brought under the ICRA are generally analyzed under the same legal framework as claims arising under Title VII. *See Hannoon v. Fawn Eng'g Corp.,* 324 F.3d 1041, 1046 (8th Cir.2003) (considering a hostile work environment claim based on race discrimination, the court determined that "[b]ecause [the plaintiff] presented no separate arguments under the ICRA, we address his state civil rights claims together with his Title VII claims."); *see also Boyle v. Alum–Line, Inc.,* 710 N.W.2d 741, 748 (Iowa 2006) (analyzing an ICRA hostile work environment claim under the same framework as Title VII). Accordingly, the Court will apply the same analytical framework to both the Title VII claim and the ICRA claim.

■ It is undisputed that the first factor is met because Stoddard, as a female, is a member of a protected class. *See Quick v. Donaldson Co.,* 90 F.3d 1372, 1377 (8th Cir.1996). The second and third factors require Stoddard to prove she was subjected to unwelcome sexual harassment based on her gender. *See Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 965 (8th Cir.1999). "Whether harassing conduct constitutes discrimination based on sex is determined by inquiring whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 358 (8th Cir.1997) (citations and internal quotations omitted).

■ Stoddard's claims for sexual harassment derive from Jones's conduct of yelling and screaming at the women in the office. Stoddard testified that she did not find the content of the alleged harassing

behavior sexually offensive, but rather she alleges that the harassing behavior was sexual in nature because Jones only yelled at women in the office and never yelled and screamed at men in the office who were allegedly behaving similarly. *See Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993) ("The predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature." (citing *Hall,* 842 F.2d at 1014)). It is uncontested that Jones initiated his April meeting with only women in the office after he was informed about poor work performance and inappropriate emails by some of the women in the office. However, there is no evidence that Jones was aware of any poor work performance or inappropriate behavior of similarly-situated, male office employees, nor, apart from Stoddard's conclusory Affidavit claim, does the record indicate that the male employees were not subjected to similar harassment. Jones' conduct was directed toward women because he was made aware that women in the office were sending inappropriate emails and behaving inappropriately. Because the alleged harassing behavior is only loosely connected to Stoddard's gender, the alleged conduct is not actionable as sexual harassment under Title VII.

 Assuming without deciding that Stoddard has shown that she was subjected to unwelcome sexual harassment based on her gender, the harassment must also be "sufficiently severe or pervasive to alter the conditions of [Stoddard's] employment." *O'Brien v. Dep't of Agric.,* 532 F.3d 805, 809 (8th Cir.2008) (citation and internal quotation marks omitted). "The harassment must be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and the victim must subjectively believe that her working conditions have been altered." *Henthorn*

*v. Capitol Commc'ns, Inc.,* 359 F.3d 1021, 1026 (8th Cir.2004) (quoting *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367). The Court must view the totality of the circumstances by examining the frequency and severity of the conduct, whether physical threats are involved, and whether the behavior interferes with Plaintiff's job performance. *Duncan v. Gen. Motors Corp.,* 300 F.3d 928, 934 (8th Cir.2002).

Stoddard's hostile work environment claims essentially stem from three events: (1) Jones screamed and yelled at Stoddard and another employee for inappropriate behavior in February 2009; (2) Jones ignored Stoddard after she became engaged in February 2009; and (3) Jones screamed and yelled at all of the women in the administrative team in April 2009. Stoddard testified that Jones only yelled at her and other women on two occasions and that Jones never screamed at her individually. The alleged harassing conduct does not appear to have permeated the workplace but rather created only a few isolated innocents of offensive conduct. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' ").

Much like the isolated nature of the conduct, the severity of the behavior also fails to rise to the level of creating a hostile work environment. The alleged conduct amounted to incidents of yelling and screaming, but there is no evidence that the conduct was ever physically threatening or intimidating. Stoddard testified that Jones was "mad and hot" when he yelled at the women in the office, and he made comments that "he would make it hell for [the employees] if they ever quit" and "he wasn't afraid to treat [the employees] like [they] were in the military."

Stoddard Dep. 43:24; 40:19–20; 46:10–11, BE & K App. 4–6, ECF No. 13–4. Although offensive and inappropriate, these isolated comments are not severe enough to create a hostile work environment. *See O'Brien*, 532 F.3d at 808, 810 (holding verbal harassment and increased scrutiny, which the plaintiffs depicted as having "interfered with their work on a daily to weekly basis; embarrassed, isolated, and ostracized them; closely scrutinized and criticized their work; and increased their workload," was not severe or pervasive enough to be actionable under Title VII). There is no evidence that the isolated threats Stoddard identifies were ever carried out. Furthermore, Stoddard testified that it was not the content of Jones' behavior that she found offensive but rather that he screamed at only women in the office.

The only evidence of physical harassment is that Jones rubbed Stoddard's shoulders on one occasion in February 2009. However, regarding that incident, Stoddard testified that she did not find the touching sexually offensive. Even assuming the touching was unwelcome and based on gender, a single shoulder rub "simply [was] not severe, pervasive or demeaning enough to have altered a term, condition, or privilege of her employment." *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir.2009) (holding that a supervisor's conduct, which included "rubbing [the plaintiff]'s shoulders or back at times during her training session, calling [the plaintiff] 'baby doll' during a telephone conversation, accusing [the plaintiff] of not wanting to be 'one of my girls,' [the supervisor's] one-time, long-distance suggestion that [the plaintiff] should be in bed with him and a Mai Tai in Florida, and the insinuation that [the plaintiff] could go farther in the company if she got along with him," did not amount to sexual harassment); *Rester*, 739 F.3d at 1130 (holding a single incident where the plaintiff's supervisor screamed and cursed at plaintiff, put his hands on plaintiff three times, and physically prevented the plaintiff from leaving his office until she began screaming and yelling did not amount to actionable sexual harassment).

The Court must also consider whether the alleged harassment was so severe that it unreasonably interfered with the employee's work performance. *See Harris*, 510 U.S. at 21–23, 114 S.Ct. 367 ("A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers."). There is no indication that Jones' conduct caused Stoddard's work performance to be adversely affected. BE & K was informed that Stoddard had work deficiencies before any of Jones' allegedly harassing conduct occurred. In fact, it was Stoddard's poor work performance and inappropriate behavior that sparked Jones' actions against the women in the office. Furthermore, the alleged conduct of ignoring Stoddard after she became engaged is not severe enough to rise to actionable sexual harassment. *See Scusa*, 181 F.3d at 969 (noting that shunning, ostracism, and disrespect by a supervisor does not create an actionable hostile work environment under Title VII).[6] Stoddard asserts she was negatively affected by Jones' conduct because during her time at BE & K, she began taking anti-depressive medication. However, the

6. Although the court's discussion in *Scusa* was in reference to a retaliation claim, this Court finds that the Eighth Circuit's reasoning regarding whether shunning, ostracism, or disrespect by a supervisor constitutes an "adverse employment action" under Title VII is applicable to hostile work environment claims as well. *See Scusa*, 181 F.3d at 969.

record fails to provide any support to connect Jones' conduct to her use of this medication. Moreover, Stoddard's conduct was directed at all of the women in the office, not just Stoddard, yet the record does not contain any evidence that anyone other than Stoddard was adversely affected by Jones' behavior. Accordingly, the Court finds the conduct was not so severe as to unreasonably alter the conditions of Stoddard's employment. *See Henthorn,* 359 F.3d at 1026.

To succeed on claims of hostile work environment, Stoddard must meet a high standard. *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.,* 728 F.3d 800, 806 (8th Cir.2013) ("The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." (internal quotations and citations omitted)); *McMiller v. Metro,* 738 F.3d 185, 188–89 (8th Cir.2013) (per curium) (discussing four Eighth Circuit decisions that exhibit the demanding parameters of hostile work environment claims under Eighth Circuit precedent). Viewing the totality of the circumstances, Jones' conduct may at best be considered objectionable and offensive, but the conduct is not severe or extreme enough to constitute a hostile work environment. *Meriwether v. Caraustar Packaging Co.,* 326 F.3d 990, 993 (8th Cir.2003) ("To support a cause of action, 'conduct must be extreme and not merely rude or unpleasant . . . .' " (quoting *Alagna v. Smithville R–II Sch. Dist.,* 324 F.3d 975, 980 (8th Cir.2003))). Considering the entire record, there are no genuine issues of material fact that preclude summary judgment on the hostile work environment claims.

## D. Retaliation

Title VII prohibits retaliation by employers in response to an employee who has opposed any practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e–3(a). A plaintiff can defeat summary judgment by producing direct evidence of retaliation or by creating an inference under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Young–Losee v. Graphic Packaging Int'l, Inc.,* 631 F.3d 909, 912 (8th Cir.2011). Because Stoddard has not presented any direct evidence of retaliation, this claim will be analyzed under the *McDonnell Douglas* framework. Under *McDonnell Douglas,* the Plaintiff must first demonstrate a prima facie case of retaliation. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once the Plaintiff makes a prima facie case, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The burden then shifts back to the Plaintiff to show that the Defendant's stated reasons were pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817.

 Much like claims for hostile work environment, claims asserting retaliation under the ICRA are generally analyzed under the same legal framework as Title VII retaliation claims. *See Estate of Harris v. Papa John's Pizza,* 679 N.W.2d 673, 677–78 (Iowa 2004) ("The ICRA was modeled after Title VII, and therefore we have consistently employed federal analysis when interpreting the ICRA."); *see also Young–Losee,* 631 F.3d at 912 (stating that ICRA retaliation claims are analyzed "under the 'same method as federal retaliation claims' " (quoting *Smith v. Allen Health Sys.,* 302 F.3d 827, 836 (8th Cir.2002))). Accordingly, the same analytical framework is applied to both the Title VII claim and the ICRA claim.

## 1. Prima Facie Case

To establish a prima facie case of retaliation, Stoddard must prove (1) she en-

gaged in a statutorily protected activity under Title VII, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two. *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir.2007).

### a. Protected Activity

A protected activity can either be opposing an act of discrimination made unlawful by Title VII (the opposition clause) or participating in an investigation under Title VII (the participation clause). *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir.2002). Stoddard did not file a complaint with the ICRC until after her termination; therefore, whether or not she engaged in a protected activity must be analyzed under the opposition clause.

> The opposition clause protects an employee against discrimination because he has "opposed" any practice "made an unlawful employment practice" by Title VII. [The Eighth Circuit], like other circuits, has interpreted this provision more broadly than its plain language might suggest. The clause encompasses actions that "oppose" employment practices that are unlawful, but also includes opposition to practices that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful.

*Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 742 (8th Cir.2005); *see also Schoonover v. Schneider Nat'l Carriers, Inc.*, 492 F.Supp.2d 1103, 1152 (S.D.Iowa 2007) ("Our circuit has interpreted the 'opposition clause' broadly to protect an employee's opposition to employment practices eventually shown to be unlawful, as well as to employment practices that are not unlawful but which the employee opposed with a good faith, objectively reasonable belief that the practices were unlawful." (citations omitted)).

 Stoddard testified that she made several complaints to Lockhart, Norris, and Clark regarding Jones' behavior. Stoddard testified that she complained of Jones ignoring her after she became engaged, overloading her with work, and telling her he would treat her like she was in the military. Stoddard also testified that she made complaints to the BE & K Hotline about Jones' behavior beginning around April 2009. Although Stoddard claims to have complained about Jones' conduct, she has not produced any evidence that her complaints referred to any form of gender discrimination, or that at that time, she in good faith regarded Jones' conduct as being associated with unlawful gender discrimination. Accordingly, Stoddard has not produced sufficient evidence to create a genuine issue of material fact that she participated in an activity protected under Title VII. *See Hunt*, 282 F.3d at 1028–29 (finding complaints about lack of a pay increase and a change in job title not attributed to sex discrimination did not constitute a protected activity for the purposes of Title VII); *Curd v. Hank's Disc. Fine Furniture, Inc.*, 272 F.3d 1039, 1041 (8th Cir.2001) (per curium) (finding the plaintiff's email to her supervisor complaining of conduct by male employees did not amount to engaging in a protected activity because a reasonable person could not have found the conduct violated Title VII); *Genosky v. Minnesota*, 244 F.3d 989, 993 (8th Cir.2001) (finding a complaint about merely unfair treatment does not constitute a protected activity under Title VII, whereas a complaint of unlawful discriminatory treatment does).

### b. Materially Adverse Action

 The second element Stoddard must prove is that a materially adverse action was taken against her following her protected activity. The disputed issue is whether Stoddard was terminated by BE

& K on May 15, 2009. *See Carrington v. City of Des Moines*, 481 F.3d 1046, 1050 (8th Cir.2007) (noting that termination constitutes a materially adverse employment action). It is undisputed that Stoddard did not show up for work from May 12 through May 14, 2009. When Stoddard reported to work on May 15, she provided BE & K with a doctor's note explaining her absences. Stoddard was then instructed to meet Jones and Clark in the break room.

Stoddard testified in her deposition that Lockhart told her to meet Jones and Clark in the break room and that she was being terminated because of a change in the attendance policy. Stoddard also asserts that when she was waiting in the break room, an ADM employee asked Stoddard why she was waiting if she was being fired. With the belief that she was terminated, Stoddard walked out of the office and turned in her ID card, office keys, safety eye wear, and helmet to the front gate. Stoddard argues that this amounted to termination by BE & K. Defendants, however, deny that Lockhart ever told Stoddard that she was terminated and insist that Stoddard voluntarily quit when asked to meet with Jones and Clark. The evidence, taken in the light most favorable to Stoddard, at least raises a genuine issue of fact that the action taken against her on May 15 constituted an adverse employment action and thus satisfies the second element of a prima facie case of retaliation.

### c. Causal Connection

▮ Stoddard must also demonstrate there was a causal relationship between engaging in the protected activity and the identified adverse employment action. Stoddard relies solely on the close timing between her complaints and her termination to establish the causal relationship. Stoddard alleges she initiated her complaints to her supervisors regarding Jones' conduct in February 2009. The alleged adverse action occurred on May 15, 2009. While it is true that "timing of [a] termination can be close enough to establish causation in a prima facie case, ... [g]enerally more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Thompson v. Bi–State Dev. Agency*, 463 F.3d 821, 826 (8th Cir.2006) (alterations in original) (internal citation and quotation marks omitted). Without more evidence of causation, Stoddard is not able to establish the causal connection between the protected activity and the adverse employment action. *See Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002) ("[A] mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge." (citations and quotation marks omitted)).

To survive summary judgment, all elements a prima facie case must be met. Stoddard has failed to meet her burden of demonstrating a prima facie case of retaliation.

### 2. Legitimate Nonretaliatory Reason [7]

▮ Had Stoddard met her burden of demonstrating a prima facie case of retaliation, the burden would have shifted to Defendants to provide a legitimate, nonretaliatory reason for the adverse employ-

7. Although the Court has found that Stoddard has not presented a prima facie case of retaliation, the Court completes the burden-shifting analysis because the grant of summary judgment may be affirmed on any basis supported by the record. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 852 (8th Cir.2012) ("We may affirm a district court's grant of summary judgment on any basis supported by the record." (quoting *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1110 (8th Cir. 2007))).

ment action. *See Wallace v. Sparks Health Sys.*, 415 F.3d 853, 860 (8th Cir. 2005). Defendants assert that even if the action against Stoddard constituted termination, such action was justified because Stoddard violated the company's attendance policy.

BE & K's Attendance Policy (the Policy), which Stoddard signed on December 2, 2008, in pertinent part provides that "Employees who are going to be late or absent from work are expected to notify the BE & K Personnel Office ... as far in advance as possible prior to the start of their shift.... Calls made later than 30 minutes after scheduled start time will be considered a no call/no show." Dec. 1, 2008, BE & K Attendance Policy, BE & K App. 18–19, ECF No. 13–4. The Policy further provides that two occurrences of no call/no show in a two-week period subjects the employee to termination. *Id.* Stoddard missed more than two days in May 2009 without prior notification to BE & K. At the time she reported to work on the morning of May 15, 2009, Stoddard was subject to termination under the Policy. This is a legitimate and nonretaliatory reason for termination. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994–95 (8th Cir.2011) (finding a violation of a company's attendance policy is a nondiscriminatory, legitimate reason for termination). Further, BE & K twice received complaints of Stoddard's work deficiencies and inappropriate office behavior and verbally counseled Stoddard for her poor work performance and office behavior on April 21, 2009—less than one month prior to her termination. The verbal counseling discussed a decline in Stoddard's attitude and work performance, interruptions in the work place, and gossip with co-workers.

Stoddard's record of poor work performance constitutes a nondiscriminatory, legitimate reason for her termination. *See Hill v. St. Louis Univ.*, 123 F.3d 1114, 1119 (8th Cir.1997) (finding poor work performance was a legitimate, nondiscriminatory reason for termination).

### 3. Pretext

■■■ Defendants having provided a legitimate non-discriminatory reason for terminating Stoddard, "[t]he burden of production then returns to [Stoddard] to show that the employer's reason was a pretext for discrimination." *Barker v. Mo. Dep't of Corrs.*, 513 F.3d 831, 834 (8th Cir.2008). Stoddard has failed to meet this burden. Stoddard provides no argument and produces no evidence demonstrating BE & K's reasons for terminating her were pretextual. Instead, Stoddard only asserts that the close temporal proximity between her complaints and her termination create an inference of retaliatory intent. *See Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 916 (8th Cir.2006) ("[T]iming alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse employment action." (citing *EEOC v. Kohler Co.*, 335 F.3d 766, 774 n. 7 (8th Cir. 2003))).

Stoddard has failed to meet her ultimate burden of persuasion under the *McDonnell Douglas* burden-shifting analysis.

### E. Intentional Infliction of Emotional Distress

■■■■ Defendants argue, and Plaintiff appeared to concede at hearing,[8] Stoddard's claim for intentional infliction of emotional distress is preempted by the ICRA. The ICRA provides for an exclusive

---

8. Counsel appeared to accept the ICRA would preempt the intentional infliction of emotional distress claim, while arguing that should the ICRA claim fail, the intentional infliction of emotional distress claim would stand on its own. However, the Court finds the intentional infliction of emotional distress separately fails on its merits.

remedy for discriminatory conduct prohibited under that statute. *Smidt v. Porter,* 695 N.W.2d 9, 17 (Iowa 2005) ("To the extent the ICRA provides a remedy for a particular discriminatory practice, its procedure is exclusive and the claimant asserting that practice must pursue the remedy it affords."); *see Napreljac v. John Q. Hammons Hotels, Inc.,* 461 F.Supp.2d 981, 1038 (S.D.Iowa 2006) (noting that when "success on the non-ICRA claims requires proof of discrimination because the two claims rely on common operative facts, the non-ICRA claims cannot proceed" (citation and internal quotation marks omitted)); *Graves v. City of Durant,* No. C09–0061, 2010 WL 785850, at *14–16 (N.D.Iowa Mar. 5, 2010). "Thus, '[p]reemption occurs unless the claims are separate and independent, and therefore incidental, causes of action.'" *Weems v. Federated Mut. Ins. Co.,* 220 F.Supp.2d 979, 995 (N.D.Iowa 2002) (alteration in original) (quoting *Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 37 (Iowa 1993)). Stoddard's claim for intentional infliction of emotional distress is premised upon the same facts and allegations as the discrimination claims.[9] As the tort claim is not a separate and independent claim apart from the ICRA claims, Stoddard's claim for intentional infliction of emotional distress is preempted by the ICRA.

▮ Preemption of the claim notwithstanding, Stoddard's claim for intentional infliction of emotion distress is before the Court and separately fails on its merits. The elements of the tort of inten-

tional infliction of emotional distress are "(1) [o]utrageous conduct by the defendant; (2) [t]he defendant's intentional causing, or reckless disregard of the probability of causing, emotional distress; (3) [p]laintiff suffered severe or extreme emotional distress; and (4) [a]ctual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 635–36 (Iowa 1990) (quoting *Vinson v. Linn–Mar Cmty. Sch. Dist.,* 360 N.W.2d 108, 118 (Iowa 1984)). "The allegation of outrageousness requires an extreme [amount] of egregiousness." *Hanson v. Hancock Cnty. Mem'l Hosp.,* 938 F.Supp. 1419, 1440 (N.D.Iowa 1996). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and quotation marks omitted). Success on a claim of intentional infliction of emotional distress in employment cases is tough, and the conduct Stoddard complains of falls well short of the "outrageous conduct" required under Iowa law. *See Van Baale v. City of Des Moines,* 550 N.W.2d 153, 157 (Iowa 1996) (affirming the dismissal of an employee's intentional infliction of emotional distress claim and noting the difficulty of meeting the "extremely egregious" standard in employment cases).

### F. Aiding and Abetting

Under the ICRA, it is unlawful for a person to aid and abet an unlawful dis-

---

9. In Paragraph 60 of her Complaint, Stoddard alleged:

> The Defendants intentionally inflicted emotional distress upon the Plaintiff, including but not limited to, the following:
>
> A. Continually making humiliating and harassing comments towards the Plaintiff despite her objections and refusals, as described in paragraphs 14–21.

> B. Taking no disciplinary action towards supervisor Kevin Jones for his harassment towards the Plaintiff.
> C. Retaliating against the Plaintiff as described in paragraphs 14–21 for complaining of the gender discrimination and hostile work environment that she was subjected to at the hands of her supervisor, Kevin Jones.
>
> Compl. ¶ 60, ECF No. 1.

criminatory practice. Iowa Code § 216.11(1) ("It shall be an unfair or discriminatory practice for ... [a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter."). Because Stoddard's claims for hostile work environment and retaliation under the ICRA do not survive summary judgment, she cannot succeed on her claim for aiding and abetting against Jones under Iowa Code Ch. 216. *Cf. Johnson v. BE & K Const. Co., LLC*, 718 F.Supp.2d 988, 1009 (S.D.Iowa 2010) (finding that because the plaintiff's discrimination claim failed, the plaintiff's aiding and abetting claim also failed). Accordingly, Plaintiff's claim for aiding and abetting must be dismissed.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment, ECF Nos. 13 and 14, must be **granted.**

**IT IS SO ORDERED.**